## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MARGARETA BISPHAM,
     Plaintiff,

     v.

HARTFORD HOSPITAL,
     Defendant.

No. 14-cv-1126 (VAB)

### RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiff, Margareta Bispham, brought this action in Connecticut Superior Court against Hartford Hospital, her former employer, asserting claims under the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act ("Title VII"), the Connecticut Fair Employment Practices Act ("CFEPA"), and negligent infliction of emotional distress and intentional infliction of emotional distress under Connecticut state law.  ECF No. 1-1. Defendant, Hartford Hospital, removed the case to this Court, ECF No. 1, and now moves for summary judgment on all counts of the Plaintiff's complaint.  ECF No. 24.

For the reasons discussed below, the Court **GRANTS** summary judgment in favor of Hartford Hospital on all of Ms. Bispham's federal claims.  The Court declines to exercise supplemental jurisdiction over her remaining state law claims, and therefore **REMANDS** those claims to the Connecticut Superior Court.

## I.   STATEMENT OF FACTS

Ms. Bispham was hired by Hartford Hospital on July 24, 1995 for a 24 hour per week Patient Care Associate ("PCA") position on the general surgery floor.  Def.'s Local Rule

56(a)(1) Statement ¶ 1, ECF No. 26.[1]  As of the date this lawsuit was filed in 2014, Ms. Bispham

was 52 years old.  Compl. ¶ 4, ECF No. 1-1.  Ms. Bispham became a full-time 40 hour per week

PCA on the general surgery floor on August 27, 1995.  Def.'s Local Rule 56(a)(1) Statement ¶ 2.

On May 27, 2001, she applied for and received a transfer to a full-time PCA position on the

Neuro/Trauma Intensive Care Unit ("ICU") at Hartford Hospital.  *Id.*  ¶ 3.  Ms. Bispham worked

the 11:00 PM to 7:00 AM shift ("night shift") in the ICU.  *Id.* ¶ 5.  Ms. Bispham was notified of

her termination during a meeting on November 16, 2012.  Ruszczyk Decl. ¶ 35, ECF No. 26-3.

In 2011 and 2012, Kathryn Ruszczyk was the Nurse Manager assigned to the ICU.

Def.'s Local Rule 56(a)(1) Statement ¶ 7.  Ms. Ruszczyk was responsible for evaluating Ms.

Bispham's job performance during the period from 2010 to 2012.  *Id.* ¶¶ 8-10. Ms. Ruszczyk

was 45 years old in November 2012.  Ruszczyk Decl. ¶ 34.

On February 8, 2013, Ms. Bispham filed a complaint with the Connecticut Commission

on Human Rights and Opportunities ("CHRO") regarding the age and sex discrimination

allegations in this case.  Compl. ¶ 4.  On April 23, 2014, the CHRO released jurisdiction.  *Id.*

The EEOC released jurisdiction on May 21, 2014.  *Id.*  Ms. Bispham filed the complaint in this

case on July 16, 2014 in Connecticut Superior Court, and Defendants removed the case to this

Court on August 4, 2014.  Notice of Removal, ECF No. 1.

---

[1] The Court notes that Plaintiff's Local Rule 56(a)(2) statement does not contain any citations to the record and does not comply with the requirement that any denials of facts in a nonmovant's Local Rule 56(a)(2) statement "be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." Local Rule 56(a)(3).  In the absence of such citations, the Court may "deem[] certain facts that are supported by the evidence admitted."  Local Rule 56(a)(3); *see Dolan v. Select Portfolio Servicing*, No. 03-CV-3285, 2016 WL 3512196, at *1 n. 4 (E.D.N.Y. June 22, 2016) ("Where a party either (i) admits or (ii) denies without citing to admissible evidence facts alleged in the opposing party's Local Rule 56.1 Statement, the Court shall deem such facts undisputed."); *see also Cashman v. Ricigliano*, No. Civ. 3:02CV1423(MRK), 2004 WL 1920798, at *1 n.2 (D. Conn. Aug. 25, 2004) (deeming facts in a Local Rule 56(a)(1) Statement admitted because the opposing party did not file a Local Rule 56(a)(2) Statement); *August v. Dep't of Corrections*, 424 F. Supp. 2d 363, 365 n.2 (D. Conn. 2006) (same); *see also Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (in adjudicating summary judgment, courts "must be satisfied that the citation to evidence in the record supports the assertion").  Accordingly, the Court deems the facts in the Defendant's Local Rule 56(a)(1) statement admitted, to the extent that the facts are supported by the record.

### A.    Plaintiff's Sexual Harassment Allegations

During the period that Ms. Bispham worked night shift in the ICU, there was only one male PCA, J. King, who regularly worked the same shift in the ICU.  Def.'s Local Rule 56(a)(1) Statement ¶ 54.  Ms. Ruszczyk was manager to both Mr. King and Ms. Bispham.  *Id.* ¶ 55.  Hartford Hospital has a Sexual Harassment and Misconduct Policy.  Sexual Harassment Policy, Nowakowski Dec. Ex. 1, ECF No. 26-1.

In July 2010, Ms. Bispham spoke to Ms. Ruszczyk and alleged that Mr. King was sexually harassing her.  Def.'s Local Rule 56(a)(1) Statement ¶ 56.  Ms. Bispham had several meetings with Ms. Ruszczyk and with William Bell, the Human Resources Consultant then assigned to the ICU, regarding her allegations against Mr. King.  *Id.* ¶ 60-63; Bispham Dep. 32:13-20, ECF No. 26-2.  Mr. Bell and Ms. Ruszczyk also met with Mr. King to discuss the allegations, and Mr. King "became visibly and emotionally upset," "assured [them] that he never harassed Ms. Bispham," and "swore to [them] on the life of his still living mother that he would never do anything of that sort."  Ruszczyk Decl. ¶¶ 45-46.

When Ms. Bispham first spoke to Ms. Ruszczyk to allege that Mr. King was sexually harassing her, Ms. Ruszczyk thought Ms. Bispham's report "was very general" and that she failed to "provide any special details, names of witnesses, or other evidence to support her allegations."  Ruszczyk Decl. ¶ 40.  Ms. Ruszczyk had never before received complaints from any other ICU staff member alleging that Mr. King had sexually harassed or behaved inappropriately towards them.  *Id.* ¶ 41.  In Ms. Ruszczyk's experience, the ICU's female staff "uniformly regarded" him as an "appropriately collegial and hardworking PCA who was a collaborative and helpful [team] member."  *Id.* ¶ 42.  As part of her investigation, Ms. Ruszczyk spoke to other members of the ICU staff, and "none of them supported Ms. Bispham's

allegation," and one employee even "reported that Ms. Bispham would regularly swear and use other inappropriate language in the department." *Id.* ¶ 47.  Thus, Mr. Bell and Ms. Ruszczyk concluded that they could not substantiate Ms. Bispham's sexual harassment complaint. *Id.* ¶ 48.

Despite being unable to substantiate Ms. Bispham's allegations, Mr. Bell and Ms. Ruszczyk suggested that Mr. King "apologize to Ms. Bispham for having done anything that might have made her feel uncomfortable," in an effort to resolve the situation.  Ruszczyk Decl. ¶ 49.  Ms. Ruszczyk also told Ms. Bispham that Human Resources ("HR") had spoken to Mr. King regarding her allegations, but that the discussion between Mr. King and HR "was a confidential personnel matter" between Mr. King and HR.  *Id.* ¶ 50. Finally, Ms. Ruszczyk also told Ms. Bispham to address any further complaints or concerns to Mr. Bell.  *Id.* ¶ 51.

Between the period when Ms. Bispham raised her sexual harassment complaints in July 2010 and the date when Mr. King retired on May 27, 2011, Ms. Bispham did not make any additional sexual harassment complaints.  Def.'s Local Rule 56(a)(1) Statement ¶ 72. During this period, Ms. Ruszczyk also did not receive complaints from any other staff member alleging that Mr. King sexually harassed or behaved inappropriately towards them.  *Id.* ¶ 73.

## B.    Plaintiff's Other Allegations

Ms. Bispham has testified that her age discrimination claim is based on two incidents where she was denied time off to facilitate her attendance at the co-worker's funeral and the ICU department picnic.  Bispham Dep. 81:7-16.  In addition to these incidents, Ms. Bispham also alleges that her termination was based on her age because she was "one of the oldest PCAs on the unit."  *Id.* 81:17-22.

In June 2011, Ms. Bispham requested time off to attend a co-worker's funeral.  Def.'s Local Rule 56(a)(1) Statement ¶ 75.  The funeral was not, however, scheduled to occur during

Ms. Bispham's 11:00 P.M. to 7:00 A.M. shift.  *Id.* ¶ 77.  Ms. Bispham's testimony acknowledges that the scheduled time for the funeral did not overlap with her shift.  Bispham Dep. 85:21-86:6.  Ms. Bispham's request for time off to attend the funeral was denied.  *Id.* ¶ 76.

In August 2011, Ms. Bispham requested time off to attend the ICU department's picnic.  Def.'s Local Rule 56(a)(1) Statement ¶ 78.  The picnic was not, however, scheduled to occur during Ms. Bispham's 11:00 P.M. to 7:00 A.M. shift.  *Id.* ¶ 79.  Although there was no scheduling conflict between Ms. Bispham's shift and the picnic, Ms. Bispham testified that after working the night shift the previous night and attending the picnic the next day, she would be "too tired to come back in and do the night shift."  Bispham Dep. 83:16-22.  Ms. Bispham's request for time off to attend the picnic was denied. Def.'s Local Rule 56(a)(1) Statement ¶ 80.

### C.      Plaintiff's Performance Evaluations

Ms. Ruszczyk conducted Ms. Bispham's performance review for 2010 to 2011 and gave her several ratings of "below expectations."  Ruszczyk Decl. ¶ 5.  These "below expectations" ratings gave Ms. Bispham some indication that, based on feedback from the other ICU nurses, Ms. Ruszczyk had concerns about Ms. Bispham's "interactions with the [other] nurses" and her being "difficult" with regards to "task completion and assistance with patient care."  Bispham Dep. 51:11-23.  In February 2012, Ms. Ruszczyk gave Ms. Bispham verbal counseling based on complaints from other ICU nurses regarding Ms. Bispham's job performance.  Ruszczyk Decl. ¶ 6.  Ms. Bispham recalls that, during this meeting, Ms. Ruszczyk discussed "continuing concerns about [her] refusing to assist team members with patient care when asked" and gave Ms. Bispham a verbal warning about these concerns.  Bispham Dep. 52:9-19.

On July 2, 2012, Ms. Ruszczyk issued Ms. Bispham a written warning.  Def.'s Local Rule 56(a)(1) Statement ¶ 10; Written Warning, Ruszczyk Decl. Ex. 1.  The written warning

indicated that Ms. Bispham demonstrated several ongoing insubordinate behaviors including a "[f]ailure to complete delegated tasks as requested" by other nurses, [2] "[f]ailure to communicate/appropriately acknowledge team members when asked to assist with patient care task(s)," and a "failure to report work related injury to Resource Nurse and Nurse Manager at time of injury."  Written Warning, Ruszczyk Decl. Ex. 1.  The written warning notes that Ms. Bispham had been counseled multiple times with regards to these problems, most recently with the verbal counseling and warning in February 2012 and that, since then, Ms. Bispham "continue[d] to fail to assist her team members when asked to complete tasks appropriate and expected of her role."  *Id.*  Ms. Bispham testifies that the complaints from the other nurses were inaccurate and that the other nurses were lying.  Bispham Dep. 56:12-15.

After Ms. Bispham received the written warning, Ms. Ruszczyk decided to move Ms. Bispham to an earlier shift so that Ms. Ruszczyk could provide more oversight and support to her.  Def.'s Local Rule 56(a)(1) Statement ¶ 13.  The written warning gave Ms. Bispham 30 days notice of her "[r]emoval from the [n]ight shift."  Written Warning, Ruszczyk Decl. Ex. 1.  Ms. Ruszczyk originally asked Ms. Bispham to transfer to the 7:00 A.M. to 3:00 P.M. shift (the "day shift"), Ms. Ruszczyk's shift.  Def.'s Local Rule 56(a)(1) Statement ¶ 15.  Ms. Bispham told Ms. Ruszczyk that she could not work the day shift because she had another job that conflicted with it.  Bispham Dep. 59:8-14.  Instead, Ms. Ruszczyk agreed to transfer Ms. Bispham to the 3:00 P.M. to 11:00 P.M. shift (the "second shift") instead, beginning the week of August 5, 2012.  Def.'s Local Rule 56(a)(1) Statement ¶ 17; Bispham Dep. 59:15-19.  Ms. Ruszczyk informed

---

[2] The written warning listed several specific examples of these failures: (1) "[r]efusing to assist with agitated patient to maintain patient safety when asked," (2) "[r]efusing to assist with transferring patient out of unit," (3) "[r]efusing to assist with patient care if not 'on her side of the unit,'" (4) "[r]efusing to assist own role team members with patient care when asked," and (5) "[r]efusing to change suction canisters, empty Foleys, assist with patient turns when asked."

Ms. Bispham by email that this "transition [was] based on her sustained performance which [would] be re-evaluated periodically over the next 6 months."  Email, Ruszczyk Decl. Ex. 2.

After receiving the written warning, Ms. Bispham met with Cherly Ficara, the Vice President of Patient Care Services at Hartford Hospital, to discuss the warning, her disagreement with it, and the other nurses' complaints.  Def.'s Local Rule 56(a)(1) Statement ¶ 19; Bispham Dep. 62:3-23.  In 2012, Ms. Ficara was age 51.  Def.'s Local Rule 56(a)(1) Statement ¶ 21.

On July 30, 2012, Ms. Bispham met with Beverly Sherbondy, the Director of Human Resources at Hartford Hospital at that time.  Def.'s Local Rule 56(a)(1) Statement ¶ 22.  During the meeting, Ms. Bispham discussed her disagreement with the written warning and the other nurses' complaints.  Bispham Dep. 66:7-11.  Ms. Bispham requested an opportunity to meet with Ms. Ruszczyk, the nurses who had complained to Ms. Ruszczyk, and Ms. Sherbondy to discuss the written warning and the complaints.  *Id.* 66:12-15.  Ms. Sherbondy later told Ms. Bispham that she discussed this possible meeting with Ms. Ruszczyk, but Ms. Ruszczyk had explained that the meeting was unnecessary because she already had "all the paperwork to substantiate what was said," so no such meeting occurred.  *Id.* 66:20-24.  In 2012, Ms. Sherbondy was age 59.  Def.'s Local Rule 56(a)(1) Statement ¶ 23.

In September 2012, Ms. Bispham met with Peter Fraser, the Vice President of Human Resources at Hartford Hospital, again to discuss the written warning.  Def.'s Local Rule 56(a)(1) Statement ¶ 26.  During the meeting, Mr. Fraser showed Ms. Bispham redacted copies of some of the other nurses' complaints, which were contained in emails to Ms. Ruszczyk. Bispham Dep. 43:16-19.  In 2012, Mr. Fraser was age 56.  Def.'s Local Rule 56(a)(1) Statement ¶ 27.

Subsequently, Ms. Ruszczyk issued Ms. Bispham's performance review for 2011 to 2012.  Ruszczyk Decl. ¶ 18.  As with the previous performance review, Ms. Ruszczyk gave Ms.

Bispham "below expectations" ratings in several categories.  *Id.* ¶¶ 19-20.   Ms. Ruszczyk also

gave Ms. Bispham an overall performance review of "below expectations" based on the

continuing problems with Ms. Bispham's job performance.  *Id.* ¶¶ 19-20.

**D.     Plaintiff's Termination**

In 2012, Hartford Hospital went through a staff reduction.  Nowakowsky Decl. ¶ 13.  The

hospital had a Reorganization and Staff Reduction Policy (the "Staff Reduction Policy") that

governed the staff reduction process. *Id.* ¶ 14.  In relevant part, the policy dictated that "[w]hen it

becomes necessary to reduce the number of employed staff members within a department," the

manager and a Human Resources Consultant will "conduct an analysis of functions performed

by the department and identify those functions that can be reduced or eliminated.

Reorganization Policy at 2, Nowakowsky Decl. Ex. 1, ECF No.  26-1.

After functions that are to be reduced are identified "by role number within a cost

center," the manager and Human Resources Consultant develop an implementation plan that

includes: (1) removing "[v]acant positions within the identified cost center;" and (2) in the case

that "a single incumbent occupies a position identified for reduction," the manager notifies that

employee "that his/her position is being eliminated;" and (3) in the case that a position identified

for reduction has multiple incumbents, the employees that will be terminated are "identified

primarily on the basis of their past performance in the position," but if such performance is

"equivalent," than each employee's years of service will also be considered.  *Id.*

Under the policy for when a position identified for reduction has multiple incumbents,

any employees "at Step 2 (i.e., Formal Improvement Documentation/Written Warning) or higher

of the Performance Improvement Process and those who received an overall rating of Below

Expectations on their most recent performance appraisal will be laid off first and will not be eligible to be considered for another role." *Id.* at 2-3.

Hartford Hospital retained an independent third party, Huron Consulting Group ("Huron"), to assess the different departments at the hospital and identify the functions performed by each department as well as which functions and cost centers could be reduced or eliminated. Def.'s Local Rule 56(a)(1) Statement ¶ 33. Huron's report for the ICU indicated that it was over-budget in the PCA role and that the PCA function needed to be reduced by 2.6 Full-Time Equivalent ("FTE") hours. Ruszczyk Decl. ¶ 22. Maria Tackett, the Director of the ICU, therefore instructed Ms. Ruszczyk to reduce the department's PCA positions by 2.6 FTE hours. *Id.* ¶ 23.

On October 25, 2012, another 1.0 FTE PCA, L.B., who worked in the ICU gave her resignation notice, indicating that she would leave her position on November 8, 2012 to attend graduate school. Ruszczyk Decl. ¶ 24. The elimination of L.B.'s position accounted for 1.0 of the 2.6 FTE hours that needed to be reduced in Ms. Bispham's department, leaving 1.6 FTE to reduce. *Id.* ¶ 25-26. Around this time, there was also an open 24 hour per week (0.6 FTE) PCA position in the ICU that had been posted, but not yet filled. *Id.* ¶ 27. This position was eliminated, accounting for another 0.6 of the remaining 1.6 FTE hours that needed to be eliminated, leaving 1.0 FTE to reduce. *Id.* ¶ 28.

At the time of the 2012 staff reduction, Ms. Bispham was the only PCA in the ICU who had a written warning or reached step 2 of the performance improvement process, which occurred when she receiving the written warning. Ruszczyk Decl. ¶ 30. Ms. Bispham had also been been given an overall performance review rating of "below expectations" in the most recent performance reviews. *Id.* ¶ 31. Thus, under the Staff Reduction Policy, Ms. Bispham was the

first person in line for the elimination of her 1.0 FTE PCA position.  *Id.* ¶ 32-33.  With her

termination, the ICU reduced its PCA positions by the required 2.6 FTE hours.  *Id.*

Margaret Nowakowski, a Human Resources Consultant at Hartford Hospital, and Ms.

Ruszczyk met with Ms. Bispham on November 16, 2012 to inform Ms. Bispham that her

position was being eliminated.  Nowakowski Decl. ¶¶ 1,18; Ruszczyk Decl. ¶ 35.  During the

meeting, Ms. Nowakowski informed Ms. Bispham that she would receive two weeks' salary in

lieu of notice, as permitted under the Reduction Policy.  Nowakowski Decl. ¶ 20.  In accordance

with the hospital's Severance Policy for employees affected by a reduction in force, Ms.

Nowakowski also presented Ms. Bispham with a separation agreement that would have given her

24 weeks of severance pay in exchange for a full release of claims, which Ms. Bispham refused

to sign.  *Id.* ¶¶ 21-23.

## II.     STANDARD OF REVIEW

The Court will grant a motion for summary judgment if it determines that there is no

genuine dispute of material fact and the movant is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(c).  The moving party bears the burden of showing that no genuine dispute of

material fact exists.  *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000).  Once the

moving party has satisfied that burden, the nonmoving party "must set forth specific facts

demonstrating that there is a genuine issue for trial" in order to defeat the motion for summary

judgment.  *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (internal quotation marks

omitted).

"A dispute regarding a material fact is genuine if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  *Williams v. Utica Coll. Of Syracuse Univ.*,

453 F.3d 112, 116 (2d Cir. 2006) (quoting *Stuart v. Am. Cyanamic Co.*, 158 F.3d 622, 626 (2d

Cir. 1998)).  The substantive law governing the case identifies which facts are material, and

"only disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." *Boubolis v. Transp. Workers Union of Am.*,

442 F.3d 55, 59 (2d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)).

On summary judgment, the Court's task is "carefully limited to discerning whether there

are any genuine issues of material fact to be tried, not to deciding them." *Gallo v. Prudential

Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).  When reviewing the record

on a motion for summary judgment, the Court must "assess the record in the light most favorable

to the non-movant" and "draw all reasonable inferences in the non-movant's favor." *Weinstock v.

Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (internal quotation marks omitted).  Inferences

drawn in favor of the nonmovant must, however, be supported by evidence, and the "mere

existence of a scintilla of evidence in support of the [nonmovant's] position" is insufficient to

defeat summary judgment.  *Liberty Lobby*, 477 U.S. at 252.  "Conclusory allegations, conjecture,

and speculation" are insufficient to create genuine issues of material fact.  *Kerzer v. Kingly Mfg.*,

156 F.3d 396, 400 (2d Cir. 1998) (internal quotation marks omitted).  If no reasonable jury

"could find in favor of the [nonmovant] because the evidence to support its case is so slight,

there is no genuine issue of material fact," then a grant of summary judgment is proper.  *Gallo*,

22 F.3d at 1224.

## III.   DISCUSSION

Plaintiff's complaint bring claims under five counts.  ECF No. 1-1.  Count One alleges

that, through the entire course of events surrounding Plaintiff's sexual harassment claims and her

termination, Defendant discriminated against Plaintiff on the basis of her age in violation of the

ADEA, CFEPA, and Connecticut common law.  Compl. at 5, ECF No. 1-1.  Count Two alleges

that, through the entire course of events surrounding Plaintiff's sexual harassment claims and her

termination, Defendant discriminated against Plaintiff on the basis of her sex in violation of Title

VII, the CFEPA, and Connecticut common law.  *Id.* at 6.  Count Three alleges that Defendant

retaliated against Plaintiff "due to her age, sex, and complaint of harassment" in violation of

Title VII, the CFEPA, and Connecticut common law.  *Id.*  Count Four alleges that, by failing to

take measures to alleviate the alleged sexual harassment of Plaintiff, the Defendant is liable for

negligent infliction of emotional distress under Connecticut common law.  *Id.*  Count Five

alleges that, by its conduct relating to both Plaintiff's sexual harassment claims and her

termination, the Defendant is liable for intentional infliction of emotional distress under

Connecticut common law.  *Id.* at 7.

For the reasons discussed below, the Court **GRANTS** summary judgment in favor of

Hartford Hospital on all of Ms. Bispham's federal claims.  The Court declines to exercise

supplemental jurisdiction over her remaining state law claims and **REMANDS** those claims to

the Connecticut Superior Court.

### A.     Time-Barred Claims

#### 1.     Denial of Time Off

The ADEA provides that "[n]o civil action may be commenced . . . under [the ADEA]

until 60 days after a charge alleging unlawful discrimination has been filed" with the EEOC.  29

U.S.C. § 626(d)(1).  Charges must be filed "within 300 days after the alleged unlawful practice

occurred."  29 U.S.C. § 626(d)(1)(B).  ADEA claims are therefore time-barred if the underlying

alleged unlawful employment practice occurred more than 300 days before the plaintiff filed a

discrimination charge with the state agency or EEOC.  *See Kassner v. 2nd Ave. Delicatessen*

*Inc.*, 496 F.3d 229, 237-39 (2d Cir. 2007) (affirming district court's finding that ADEA claims based on certain discrete acts occurring several years before complaint was filed were time-barred). "[D]iscrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges," and "each discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (discussing time-barred complaints in context of Title VII). Charges must, therefore, be filed within the 300 day period "after the discrete discriminatory act occurred." *Id.* "A discrete retaliatory or discriminatory act occurred on the day that it happened" and any "completed act . . . is not of a continuing nature," but is, instead, discrete. *Kassner*, 496 F.3d at 239 (quoting *Morgan*, 536 U.S. at 110).

Ms. Bispham testifies that her age discrimination claim is based on two incidents, in June and August of 2011, when she was denied time off to facilitate her attendance at a co-worker's funeral and the ICU department picnic, respectively. Bispham Dep. 81:7-16. Each of these denials is a discrete act. Ms. Bispham did not file her complaint with the CHRO and EEOC until February 8, 2013, more than a year after either event. Compl. ¶ 4. Because both of these denials therefore occurred more than 300 days before she filed her age discrimination complaint with the CHRO and EEOC, Ms. Bispham's age discrimination claims as to those denials are time-barred.

### 2.    Sexual Harassment Allegations

Before a plaintiff can bring a Title VII claim, she must first file a charge with the EEOC or an equivalent "[s]tate or local agency" within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78-79 (2d Cir. 2015) ("Title VII requires that individuals aggrieved by acts of discrimination file a charge with the EEOC within 180 or, in states like New York that

have local administrative mechanisms for pursuing discrimination claims, 300 days after the alleged unlawful employment practice occurred.") (internal quotation marks omitted).  Plaintiffs may allege that a series of discrete acts of sexual harassment create a "hostile environment" that is a "continuing violation" of Title VII.  *Rutkowski v. Sears Roebuck Corp.*, 210 F.3d 355 (2d Cir. 2000) (unpublished opinion).  A "continuing violation may be found where . . . specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice."  *Id.*  When there is a continuing violation, "the plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period."  *Id.*

The evidence in the record pertaining to Ms. Bispham's allegations that Mr. King sexually harassed her at work establishes only the following relevant details: (1) that Ms. Bispham reported these allegations to Ms. Ruszczyk on one occasion in July 2010; (2) that Ms. Ruszczyk found that Ms. Bispham's report did not provide details, witness names, or anything else to support the allegations; (3) that Ms. Bispham attended several subsequent meetings with Ms. Ruszczyk and Mr. Bell to discuss the allegations; (4) that Ms. Ruszczyk investigated Ms. Bispham's claims and found that no other ICU staff member had ever alleged that Mr. King sexually harassed them and that no other ICU staff member could substantiate the allegations; (5) that Ms. Ruszczyk and Mr. Bell concluded that the allegations were baseless; (6) that Ms. Ruszczyk and Mr. Bell nonetheless suggested that Mr. King apologize to Ms. Bispham for anything that he might have done to make her feel uncomfortable in order the resolve the situation; and (7) that between the period when Ms. Bispham made the allegations in July 2010 and when Mr. King retired in May 2011, neither Ms. Bispham nor anyone else made any additional sexual harassment complaints against him.

Ms. Bispham alleges that Mr. King continued to harass her, with various incidents occurring between July 2010 and April 2011, but she cites no evidence in the record to support any of these additional allegations.  Pl.'s Br. at 4-6, ECF No. 30.  Even if she had provided and cited to evidence sufficient to support these allegations, Ms. Bispham did not file her age discrimination complaint with the CHRO and EEOC until February 8, 2013, more than a full year after Mr. King's retirement on May 27, 2011. Thus, hostile work environment or other Title VII claims based solely on Mr. King's alleged harassment of Ms. Bispham are time-barred.

### B.    ADEA Claim Based on Plaintiff's Termination

Under the ADEA, it is "unlawful for an employer ... to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a).  The ADEA protects individuals "who are at least 40 years of age."  29 U.S.C. § 631(a).  ADEA disparate treatment claims are analyzed under the framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as modified by *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009).  *See Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167-68 (2d Cir. 2014) (explaining the Second Circuit's standard); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105-07 (2d Cir. 2010) (same).  Under the *McDonnell Douglas* framework, a plaintiff "bears the initial burden of establishing a prima facie case for discrimination."  *Gorzynski*, 596 F.3d at 106 (internal quotation marks omitted).  To establish a prima facie case of age discrimination, a plaintiff must show that she was "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination."  *Id.* at 107 (quoting *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000)).  The plaintiff's burden at this stage is "minimal." *Carlton*, 202 F.3d at 134.

Once a plaintiff has made out her prima facie case, the defendant must "articulate some legitimate, nondiscriminatory reason for its action." *Delaney*, 766 F.3d at 168 (internal quotation marks omitted).  If the defendant does so, the plaintiff "can no longer rely on [her] prima facie case, but must prove that the employer's proffered reason was a pretext for discrimination." *Id.* (internal quotation marks omitted).  In *Gross*, the Supreme Court established that "a plaintiff bringing a disparate treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but for' cause of the challenged adverse employment action," "not just a contributing or motivating factor." *Gorzynski*, 596 F.3d at 106 (quoting *Gross*, 557 U.S. at 180).  To find pretext at the summary judgment stage, the Court should look at the record and determine "whether [plaintiff] has raised sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that her age was a 'but for' cause of [defendant's] decision to fire [him]." *Id.* at 107.  In other words, the record must allow a reasonable jury to conclude that "the adverse employment action would not have occurred without" plaintiff's age.  *Delaney*, 766 F.3d at 168-69 (internal quotation marks omitted).

The parties dispute whether Ms. Bispham can make out the final prong of her prima facie case by showing that her termination occurred under circumstances giving rise to an inference of age discrimination. Def.'s Br. at 11, ECF No. 25.  Defendant correctly argues that it is undisputed that Ms. Bispham has not been replaced by anyone, much less a younger employee, and that there is no statistical evidence of age discrimination in the record.  *Id.*  Ms. Bispham points only to the fact that, being aged 52 as of the date this suit was filed, she was the "oldest or among the oldest of the PCAs" when she was terminated.  Compl. ¶ 6.  There is no evidence, however, of the ages of her PCA colleagues in the ICU.

16

Although the Court agrees that there is no other evidence in the record to support an inference of age discrimination besides Ms. Bispham's age and the fact that she was terminated, her burden to make out a prima facie case is a "minimal" one. *Carlton*, 202 F.3d at 134. As a result, the Court assumes, without deciding, that Ms. Bispham has made out her prima facie case of disparate treatment under the ADEA.

Defendant argues that Ms. Bispham's position was eliminated in accordance with its neutral policy governing hospital-wide layoffs or reductions in force. Where, as here, an employer terminated a plaintiff as part of a company-wide reduction in force on the basis of documentation of the plaintiff's poor job performance, the employer's burden to "articulate a legitimate nondiscriminatory reason" for the termination is satisfied. *Delaney*, 766 F.3d at 168 (agreeing that evidence of defendant's company-wide reduction in force in combination with evidence of plaintiff's poor job performance was sufficient). The record shows that Defendant terminated Ms. Bispham's position as part of a hospital-wide staff reduction and that Defendant followed its Staff Reduction Policy and used Ms. Bispham's July 2012 written warning and her overall performance rating of "below expectations" for the 2011 through 2012 period as a basis for eliminating Ms. Bispham's position. Defendant has therefore established a legitimate, nondiscriminatory reason for Ms. Bispham's termination, and she must show that her age was a "but for" cause of her termination in order for her ADEA claim to survive summary judgment.

There is no evidence in the record that is sufficient to support a reasonable finding that Ms. Bispham's age was a "but for" cause of her termination. "Without a nexus between her age and termination, [plaintiff's] evidence cannot surmount the requisite 'but for' hurdle." *Rubinow v. Boehringer Ingelheim Pharm., Inc.*, 496 F. App'x 117, 119 (2d Cir. 2012) (summary order). She points to nothing but the fact that she was terminated and her age as a basis for her claim.

There is no evidence of any other employee at Hartford Hospital ever making any disparaging comments regarding her age or that she was replaced by a younger employee. There is also no evidence of the ages of her colleagues and, therefore, no basis for analyzing whether she was treated differently from younger colleagues.

While Ms. Bispham disputes the truth of the other nurses' complaints that led Ms. Ruszczyk to issue her the July 2012 written warning and give her an overall performance rating of "below expectations," she does not point to any evidence to support her disagreement with these criticisms. In any event, "an employee's disagreement with [her] employer's evaluation of [her] performance is insufficient to establish discriminatory intent." *Ricks v. Conde Nast Publications, Inc.*, 6 Fed.Appx. 74, 78 (2d Cir. 2001) (summary order) (finding that defendant's termination of plaintiff for inadequate performance was well supported in the record despite plaintiff's disagreement).

Furthermore, all of the Hartford Hospital employees involved with her evaluations and termination are older than 40 and within the class protected by the ADEA.[3] "An inference against age discrimination can be drawn 'where the person who participated in the allegedly adverse decision is also a member of the same protected class.'" *McKinstry v. Sheriden Woods Health Care Ctr., Inc.*, No. 13CV200 AWT, 2015 WL 1004340, at *7 (D. Conn. Mar. 6, 2015) (quoting *Drummond v. IPC Intern., Inc.*, 400 F.Supp.2d 521, 532 (E.D.N.Y. 2005)).

The Court concludes that no jury could reasonably find that Ms. Bispham can establish that age was a "but for" cause of her termination by a preponderance of the evidence. Summary judgment is therefore granted in favor of Defendant on Ms. Bispham's ADEA claim.

---

[3] In 2012, the year when Defendant was issued the written warning and terminated, Ms. Ruszczyk was 45, Ms.Ficara was 51, Ms. Sherbondy was 59, and Mr. Fraser was 56.

**C.** **Title VII Claims Based on Plaintiff's Termination**

Ms. Bispham's complaint does not clearly articulate whether her Title VII claims include a disparate treatment claim based on her termination in addition to a retaliation claim.[4] While Ms. Bispham's brief alleges that Hartford Hospital "treated [her] differently and less favorably" than a male employee, this claim refers only to Defendant's treatment of her in the context of its investigation of her sexual harassment allegations. Pl.'s Br. at 13. As explained above, any claim of disparate treatment based on Ms. Bispham's sexual harassment complaints and the subsequent investigation are time-barred. Nonetheless, in an abundance of caution, the Court will construe Ms. Bispham's complaint as bringing both Title VII disparate treatment and retaliation claims, though the Court considers only events that are not time-barred when analyzing Ms. Bispham's disparate treatment claim.

**1.** **Title VII Retaliation**

Title VII prohibits an employer from discriminating "against any of his employees... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). Retaliation claims under Title VII are analyzed under the *McDonnell Douglas* framework. To make out a prima facie case for a retaliation claim, a plaintiff must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015) (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).

---

[4] Defendant's brief notes that, during her deposition, Ms. Bispham testified that "I don't think sex had anything to do with [my termination]," suggesting that her Title VII claim is solely based on the investigation of her sexual harassment allegation, but this page of the deposition was not filed with the record. Def.'s Br. at 17.

Once the plaintiff meets this burden, the defendant must "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Hicks*, 593 F.3d at 164. The burden then "shifts back to [plaintiff] to demonstrate that the proffered reason is pretext for retaliation and that, more generally, [plaintiffs'] protected activity was a but-for cause of the alleged adverse action by the employer." *Sanderson v. N.Y. State Elec. & Gas Corp.*, 560 Fed.Appx. 88, 93-94 (2d Cir. 2014) (summary order) (internal quotation marks omitted); *see Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013) (Title VII retaliation claims "must be proved according to traditional principles of but-for causation").

In determining whether the plaintiff has shown a causal connection between an adverse employment action and a protected activity under Title VII as part of her prima facie case, the "relevant inquiry . . . must focus on the retaliation [plaintiff] suffered for complaining about the harassment, not on the initial harassment itself" and "[plaintiff] must show that the defendants took an adverse employment action against her *in response* to her complaints." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006) (emphasis added). To show a causal connection between the protected activity and the alleged retaliatory action, "[t]he temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy [plaintiff's] burden." *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) (per curiam). "[C]ases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima face case uniformly hold that the temporal proximity must be 'very close,' such that "[a]ction taken . . . 20 months later suggests, by itself, no causality at all." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001). Accordingly,

the Second Circuit has found that a gap of "several months" between a protected activity and an adverse employment action "is insufficient to support the necessary causal connection" for a prima facie case of retaliation.  *Harrison v. U.S. Postal Serv.*, 450 F. App'x 38, 41 (2d Cir. 2011) (summary order).

The parties dispute whether Ms. Bispham can make out the fourth element of a prima facie case and demonstrate a causal connection between her sexual harassment complaint and her termination.  Defendant does not dispute that Ms. Bispham's sexual harassment complaint to Ms. Ruszczyk was a protected activity under Title VII, regardless of whether the alleged sexual harassment actually occurred. *See Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 65 (2d Cir. 1992) (explaining that internal sexual harassment complains are a "protected activity within the policies of Title VII"); *see also Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) ("[T]he plaintiff need not establish that the conduct she opposed was actually a violation of Title VII, but only that she possessed a good faith, reasonable belief that the underlying employment practice was unlawful under that statute." (internal quotation marks omitted)).

Ms. Bispham's sexual harassment claim and her termination, however, do not have the temporal proximity required to support an inference that there is a causal connection between them.  The evidence in the record establishes only that Ms. Bispham once alleged that Mr. King had sexually harassed her in July 2010.  According to the record, she made no further complaints after July 2010, despite her allegation that she continued to make complaints until April 2011. *See Vt. Teddy Bear*, 373 F.3d at 244 (explaining that on summary judgment, courts "must be satisfied that the citation to evidence in the record supports the assertion").  Ms. Bispham received warnings regarding her job performance in February and July 2012 and then, as part of

21

a hospital-wide reduction in force, she was notified of her termination in November 2012, more than two years after Ms. Bispham's July 2010 complaint.  Because even a 20 month gap between the protected activity and the adverse employment action is too long to find a causal relationship, *Clark Cty.*, 532 U.S. at 273-74, Ms. Bispham cannot show that a causal relationship exists and has failed to make out a prima facie case.

### 2.      Title VII Disparate Treatment

Title VII disparate treatment claims are analyzed under the burden-shifting analysis set forth in *McDonnell Douglas*.  Under this framework, a plaintiff must first establish a prima facie case of intentional discrimination by showing that "(1) [she] is a member of a protected class; (2) [she] was qualified for the position [she] held; (3) [she] suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination."  *Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012) (internal quotation marks omitted).  The plaintiff's burden to establish a prima facie case is "not onerous."  *Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016).

Once the plaintiff makes out her prima facie case, "the burden shifts to the employer to come forward with a legitimate, nondiscriminatory reason for the adverse employment action." *Reynolds*, 685 F.3d at 202.  If the employer makes that showing, the plaintiff must then show, with "admissible evidence," "circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination."  *Walsh*, 828 F.3d at 75 (discussing standard for sex discrimination claims under Title VII and New York state law).

Ms. Bispham is unable to make out the fourth prong of her prima facie case of sex discrimination because she cannot show that she was terminated "under circumstances giving

rise to an inference of discrimination." *Reynolds*, 685 F.3d at 202.  Although a plaintiff's burden at this stage is "minimal," *Walsh*, 828 F.3d at 75, she must still point to some kind of evidence that would support an inference of discrimination, such as a supervisor's invidious comments about those in plaintiff's protected class, suspicious circumstances leading up to the adverse employment action, plaintiff's replacement by someone outside the protected class, or evidence that a similarly situated man was treated differently.  *See Sassaman v. Gamache*, 566 F.3d 307, 312 (2d Cir. 2009) (stating that "invidious comments about others in the employee's protected group" or "the sequence of events leading to the plaintiff's discharge" can support inference of discrimination); *Zimmermann v. Associates First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) (explaining that replacement of plaintiff by someone outside the protected class is sufficient for a prima facie case); *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997) ("This last element of a prima facie case may be proven by showing that a man similarly situated was treated differently.").  While this is not an exhaustive list of the types of evidence that could support an inference of discrimination, it is clear that some evidence supporting an inference of discrimination is necessary for a plaintiff to make out a prima facie case.

There is no evidence in the record that would allow a rational jury to find that Ms. Bispham was terminated under circumstances giving rise to an inference of sex discrimination. The only evidence in the record that is potentially relevant to disparate treatment based on sex is: (1) that Ms. Bispham is a woman; (2) that she was terminated; and (3) that she once made a sexual harassment complaint in July 2010, which her manager and HR concluded was unsubstantiated after an investigation, more than two years before her termination in November 2012, which, as discussed above, is too long a temporal gap to support an inference that the complaint was causally related to the termination.  *Clark Cty.*, 532 U.S. at 273-74.  Based on the

record, Ms. Bispham was not replaced by anyone after her termination, much less a male employee.  Mr. King was the only male PCA who regularly worked the night shift in the ICU during Ms. Bispham's employment in that department.  Def.'s Rule 56(a)(1) Statement ¶ 54. This supports an inference that Ms. Bispham's other PCA colleagues in the ICU were women, and because she was the only ICU PCA involuntarily terminated as part of the reduction in force, it follows that at least some of the ICU PCAs remaining after the reduction in force are women. Thus, no reasonable jury could find that Ms. Bispham can make out her prima facie case of disparate treatment based on race.  Summary judgment is therefore granted in favor of Hartford Hospital as to Ms. Bispham's Title VII disparate treatment claim.

## D.       State Law Claims

Ms. Bispham also brings claims under Connecticut state law, including multiple age and sex discrimination claims under the CFEPA in addition to negligent supervision and intentional infliction of emotional distress claims under Connecticut common law.  As explained above, the Court grants summary judgment in favor of Hartford Hospital on all of Ms. Bispham's federal claims.  The Court declines to exercise supplemental jurisdiction over her state law claims.  *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction."); *Kolari v. New York–Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir.2006) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").  The Court therefore remands the remaining claims to the Connecticut Superior Court.

24

**IV.     CONCLUSION**

For all of the foregoing reasons, Defendants' Motion for Summary Judgment is

**GRANTED** as to all of Plaintiff's claims under federal law.  The Court declines to exercise

supplemental jurisdiction over the remaining state law claims, and **REMANDS** those claims to

the Connecticut Superior Court.  The Clerk is directed to enter judgment for the Defendants

accordingly and close this case.

SO ORDERED at Bridgeport, Connecticut, this 23rd day of September, 2016.


   /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge